## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES MCMENAMIN, JR., JESSICA MCMENAMIN, JEFFREY GORDON, CINDY GORDON, and JOHN BURNETT on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:20-CV-01262 |
| v. | ) ) ) | |
| ARCH INSURANCE COMPANY, | ) ) | |
| Defendant. | ) ) ) ) | |
| _____ | ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, James McMenamin, Jr., Jessica McMenamin, Jeffrey Gordon, Cindy Gordon, and John Burnett (collectively, "Plaintiffs"), bring this First Amended Class Action Complaint individually, and on behalf of all others similarly situated, against Defendant, Arch Insurance Company ("Insurer" or "Defendant"), and allege as follows based upon information and belief, except as to the allegations specifically pertaining to them, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action lawsuit on behalf of all persons who paid for and/or obtained an "Individual Travel Protection Policy" (the "Policy" or "Policies") from Insurer, and who have been denied their claim for travel reimbursements due to Covid-19 related cancellations, delays, or interruptions.

2.     On or about January 23, 2020, Plaintiffs James McMenamin, Jr. and Jessica McMenamin ("McMenamin Plaintiffs") booked travel from Pittsburgh, Pennsylvania to London, England, for a planned vacation tour from London to Rome, Italy.  McMenamin Plaintiffs' trip was scheduled to depart on June 18, 2020, and to return on June 28, 2020 (the "McMenamin Trip"). Upon booking their travel, McMenamin Plaintiffs purchased, paid for, and were issued an Individual Travel Protection Policy from Insurer, pursuant to which Insurer agreed to, among other things, reimburse McMenamin Plaintiffs for unused non-refundable prepaid payments or deposits associated with the cancellation, delay, or interruption of the McMenamin Trip.

3.     On or about February 6, 2020, Plaintiffs Jeffrey Gordon and Cindy Gordon ("Gordon Plaintiffs") booked travel from Philadelphia, Pennsylvania to Barcelona, Spain, for a planned vacation tour from Spain to Italy. Gordon Plaintiffs' trip was scheduled to depart on July 16, 2020, and to return on or about July 26, 2020 (the "Gordon Trip"). Upon booking their travel, Gordon Plaintiffs purchased, paid for, and were issued an Individual Travel Protection Policy from Insurer, pursuant to which Insurer agreed to, among other things, reimburse Gordon Plaintiffs for unused non-refundable prepaid payments or deposits associated with the cancellation, delay, or interruption of the Gordon Trip.

4.     On or about June 18, 2019, Plaintiff Burnett booked travel from Dallas, Texas to Paris, France, for a planned vacation tour from France to the Netherlands. Plaintiff Burnett's trip was scheduled to depart on March 18, 2020, and return on March 31, 2020 (the "Burnett Trip"). Upon booking his travel,  Plaintiff Burnett purchased, paid for, and was issued an Individual Travel Protection Policy from Insurer, pursuant to which Insurer agreed to, among other things, reimburse Plaintiff Burnett for unused non-refundable prepaid payments or deposits associated with the cancellation, delay, or interruption of the Burnett Trip.

2

5.      Due to the Covid-19 pandemic, and governmental orders issued in connection therewith, each of Plaintiffs' trips were cancelled.

6.      As a result of the cancellations, Plaintiffs incurred certain costs, including the unused non-refundable prepaid payments or deposits for their trips, for which they each submitted a claim under their respective Policies.

7.      In defiance of the plain terms and conditions of the Policies, Insurer has failed and refused to honor its contractual obligations to reimburse Plaintiffs for the unused non-refundable prepaid payments or deposits incurred due to the cancellation of Plaintiffs' trips.

8.      Additionally, the Policies cover perils pre- and post-departure. Risks are associated with each stage of travel, and the weight of the risks collectively is used to determine the price of the premium. Typically, the more perils covered under the Policy, the more expensive the premiums are.

9.      Despite having never assumed the risk to cover perils of post-departure travel because of their cancellations, and despite denying providing the agreed-upon coverage, Defendant has not issued any refund or reimbursement of any portion of the premiums paid by Plaintiffs. The retention of all of the premiums is unjust under the circumstances.

10.     Upon information and belief, Defendant has – on a uniform basis – failed and refused to reimburse its insureds under the Policies for unused non-refundable prepaid payments or deposits incurred as a result of the cancellation, delay, and/or interruption of trips due to Covid-19 and/or associated governmental orders. Insurer has also failed and refused to issue any refund of the premiums paid by each insured after the trips were cancelled, delayed, and/or interrupted.

11.    Plaintiffs and members of the Class are entitled to reimbursements for their trips as contracted for under the Policies or, in the alternative, a refund of the portion of premiums that covered post-departure perils.

## PARTIES

12.    Plaintiffs James McMenamin, Jr. and Jessica McMenamin are individuals and citizens of the Commonwealth of Pennsylvania, residing in Butler County, Pennsylvania.

13.    Plaintiffs Jeffrey Gordon and Cindy Gordon are individuals and citizens of the Commonwealth of Pennsylvania, residing in Philadelphia County, Pennsylvania.

14.    Plaintiff John Burnett is an individual and citizen of the State of Texas, residing in Fannin County, Texas.

15.    Defendant Arch Insurance Company is a Missouri corporation with its principal place of business at Harborside Three, 210 Hudson Street, Suite 300, Jersey City, New Jersey, 07311. Arch Insurance is an admitted insurer in all fifty states of the United States, the District of Columbia, Puerto Rico, the U.S. Virgin Islands and Guam.

## JURISDICTION AND VENUE

16.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because Plaintiffs and at least one member of the Class, as defined below, is a citizen of a different state than one or more Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

17.    This Court has personal jurisdiction over Defendant because at all relevant times tit has engaged in substantial business activities, including the sale of Policies, in Pennsylvania. Defendant has, at all relevant times, transacted, solicited, and conducted business in Pennsylvania

through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in Pennsylvania. Further, it has subsidiaries and affiliates within Defendant's group of companies that are principally based in Pennsylvania, including claims administrators that administered policies at issue here.

18.    Pursuant to 28 U.S.C. § 1391(a)(2), venue is proper in this District because McMenamin Plaintiffs' Policies were purchased in this District, and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District.

## FACTUAL BACKGROUND

### *The McMenamin Trip*

19.    On or about January 23, 2020, McMenamin Plaintiffs made travel accommodations with AffordableTours.com ("Affordable Tours"), including the purchase of airline tickets for travel from Pittsburgh, Pennsylvania to London, England, for a touring vacation from London to Rome, Italy, which was scheduled to depart on June 18, 2020, and return on June 28, 2020. The tickets for the McMenamin Trip were prepaid at a cost of $1,283.42 per person, or $2,566.84 total.

20.    In response to safety concerns and governmental orders regarding the Covid-19 pandemic, on or about April 4, 2020, Affordable Tours cancelled the McMenamin Trip.

21.    On or about May 12, 2020, Plaintiff James McMenamin, Jr. submitted a claim to Insurer to be reimbursed for his portion of the McMenamin Trip, including unused non-refundable prepaid payments or deposits under the McMenamin Policy. Plaintiff James McMenamin, Jr. was assigned Claim Number TVLC76038620, and Member ID Number TVL2712651220 ("James' Claim").

22.    On or about May 12, 2020, Plaintiff Jessica McMenamin submitted a claim to Insurer to be reimbursed for her portion of the McMenamin Trip, including unused non-refundable prepaid

payments or deposits under the McMenamin Policy. Plaintiff Jessica McMenamin was assigned Claim Number TVLC77011420, and Member ID Number TVL2712651420 ("Jessica's Claim").

23.    On or about June 23, 2020, Insurer denied James' Claim, stating "[w]e have determined that we are unable to approve your claim or to provide any benefits under your claim."

24.    On or about June 23, 2020, Insurer denied Jessica's Claim, stating "[w]e have determined that we are unable to approve your claim or to provide any benefits under your claim."

25.    McMenamin Plaintiffs received neither a reimbursement of their unused non-refundable prepaid payments or deposits under the McMenamin Policy, nor any refund for the premiums paid for post-departure risks.

### *The Gordon Trip*

26.    On or about February 6, 2020, Gordon Plaintiffs made travel accommodations, including the purchase of airline tickets for travel from Philadelphia, Pennsylvania to Barcelona, Spain, for a touring vacation from Spain to Italy, which was scheduled to depart on July 16, 2020, and return on or about July 26, 2020. The tickets for the Gordon Trip were prepaid at a cost of $6,555.46.

27.    In response to safety concerns and governmental orders regarding the Covid-19 pandemic, Gordon Plaintiffs cancelled the Gordon Trip.

28.    On or about April 1, 2020, Gordon Plaintiffs submitted a claim to Insurer to be reimbursed for the Gordon Trip, including unused non-refundable prepaid payments or deposits under the Gordon Policy. Gordon Plaintiffs were assigned Claim Number 90025661 ("Gordon's Claim").

29.    On or about April 1, 2020, Insurer denied Gordon's Claim, stating Covid-19 is not covered under the Gordon Policy.

30.   Gordon Plaintiffs received neither a reimbursement of their unused non-refundable prepaid payments or deposits under the Gordon Policy, nor any refund for the premiums paid for post-departure risks.

### *The Burnett Trip*

31.   On or about June 18, 2019, Plaintiff Burnett made travel accommodations, including the purchase of airline tickets for travel from Dallas, Texas to Paris, France, for a touring vacation from France to the Netherlands, which was scheduled to depart on March 18, 2020, and return on or about March 31, 2020. The tickets for the Burnett Trip were prepaid at a cost of $6,376.50, which were ultimately only refunded in the amount of $2,778.06 by Affordable Tours.

32.   In response to safety concerns and governmental orders regarding the Covid-19 pandemic, on or about March 7, 2020, Plaintiff Burnett cancelled the Burnett Trip.

33.   On or about March 12, 2020, Plaintiff Burnett submitted a claim to Insurer to be reimbursed for the Burnett Trip, including unused non-refundable prepaid payments or deposits under the Burnett Policy. Plaintiff Burnett was assigned Claim Numbers TVLC71665620 and TVLC74695620 (collectively, the "Burnett Claims").

34.   On or about April 9, 2020, Insurer denied the Burnett Claims, stating "Coronavirus is not a covered event, we are therefore unable to honor the claimed expenses."

35.   Plaintiff Burnett received neither a reimbursement of their unused non-refundable prepaid payments or deposits under the Burnett Policy, nor any refund for the premiums paid for post-departure risks.

### *The McMenamin Travel Insurance Policy*

36.   On or about January 23, 2020, McMenamin Plaintiffs applied for and purchased an "Individual Travel Protection Policy" administered by Arch Insurance Solutions, Inc., and

underwritten by Arch Insurance Company, to insure the McMenamin Trip (the "McMenamin Policy").

37.    Section I, Part A of the McMenamin Policy sets forth coverage for Trip Cancellation and provides, in relevant part, as follows:

> We will reimburse You, up to the Maximum Benefit Amount shown in the Schedule of Benefits, for the amount of the unused non-refundable prepaid Payments or Deposits for the Travel Arrangements You purchased for Your Trip, when You cancel Your Trip prior to departure for a covered Unforeseen reason.

38.    The McMenamin Policy provides a list of Unforeseen reasons, one of which is "for Other Covered Events, as defined . . . ."

39.    The McMenamin Policy defines the phrase "Other Covered Events" to include a circumstance where "[the policyholder] or [the policyholder's] Traveling Companion [is] . . . quarantined . . . ."  The McMenamin Policy does not define the term "quarantine."

40.    The McMenamin Policy's definition of the phrase "Other Covered Events" also includes "a cancellation of Your Trip if Your arrival on the Trip is delayed and causes You to lose 50% or more of the scheduled Trip duration due to the reasons covered under the Trip Delay Benefit . . . ."

41.    The McMenamin Policy also contains a Cancellation For Any Reason Benefit that provides coverage for any reason not otherwise covered under the McMenamin Policy.

42.    The Cancellation For Any Reason Benefit in the McMenamin Policy is described as follows:

> We will reimburse You, up to the Maximum Benefit Amount shown in the Schedule of Benefits, for 75% of the unused non-refundable prepaid Payments or Deposits for the Travel Arrangements You purchased for Your Trip, when You cancel Your Trip prior to departure for any reason not otherwise covered by this policy . . . .

43. The McMenamin Policy further contains a Trip Delay Benefit, which is described as follows:

> If You are delayed for 6 hours or more while en route to, during or returning from Your Trip due to a covered Travel Hazard, We will reimburse You up to a Maximum Benefit Amount shown in the Schedule of Benefits, for the expenses You incur for additional hotel nights, meals and local transportation while You are delayed.

44. The McMenamin Policy defines "Travel Hazard" as a "delay caused by or resulting from . . . any delay of Your Common Carrier . . . [or] quarantine . . . ."

45. The Maximum Benefit Amount under the McMenamin Policy on the Schedule of Benefits is as follows:

**SCHEDULE OF BENEFITS**

| Benefits | Maximum Benefit Amount |
|---|---|
| **Part A – Travel Arrangement Protection** | |
| Trip Cancellation | 100% of Trip Cost (Maximum $10,000) |
| Cancellation for Any Reason | Up to 75% of Non-Refundable Trip Cost(Maximum $10,000) |
| Trip Interruption | 100% of Trip Cost (Maximum $10,000) |
| Occupancy Upgrade | 100% of Trip Cost (Maximum $10,000) |
| Missed Connection | $500 |
| Trip Delay | $1,000 ($200/day) |

### *The Gordon Travel Insurance Policy*

46. On or about February 6, 2020, Gordon Plaintiffs applied for and purchased an "Individual Travel Protection Policy" administered by Aon Travel, and underwritten by Arch Insurance, to insure the Gordon Trip (the "Gordon Policy").

47. The Gordon Policy contains an "Any Reason" Cruise Credits benefit, described as follows:

> In the event that you choose to cancel for a reason not authorized above or for a reason that is otherwise restricted, at any time up until departure, and you have purchased the CruiseCare, Celebrity Cruises will provide you a cruise credit equal to 75% of the non-refundable value (excluding Flights by CelebritySM, previously known as ChoiceAir) of your Cruise Vacation prepaid to Celebrity, for your use toward a future cruise.

48. The Gordon Policy also contains a Trip Delay benefit, described as follows:

If You are delayed while en route to, during or returning from Your Trip due to a covered Travel Hazard, We will reimburse You up to a Maximum Benefit Amount shown in the Schedule of Benefits, for the expenses You incur for Your Additional Transportation Cost to join the departed Trip, Your prepaid expenses for the unused land or water Travel Arrangements, and/or additional hotel nights, meals, telephone calls and economy transportation while You are delayed.

49.    The Gordon Policy defines "Travel Hazard" as a "delay caused by or resulting from . . . any delay of Your Common Carrier . . . [or] quarantine . . ."

50.    The Gordon Policy does not define the term "quarantine."

51.    The Maximum Benefit Amount under the Gordon Policy on the Schedule of Benefits is as follows:

**SCHEDULE OF BENEFITS**

| Benefits | Maximum Benefit Amount |
|---|---|
| Part A – Travel Arrangement Protection | |
| Trip Interruption | Total Trip Cost |
| Trip Delay | $500 |

***The Burnett Travel Protection Policy***

52.    On or about June 18, 2019, Plaintiff Burnett applied for and purchased an "Individual Travel Protection Policy" administered by Arch Insurance Solutions, Inc., and underwritten by Arch Insurance Company, to insure the Burnett Trip (the "Burnett Policy").

53.    Section I, Part A of the Burnett Policy sets forth coverage for Trip Cancellation and provides, in relevant part, as follows:

We will reimburse You, up to the Maximum Benefit Amount shown in the Schedule of Benefits, for the amount of the unused non-refundable prepaid Payments or Deposits for the Travel Arrangements You purchased for Your Trip, when You cancel Your Trip prior to departure for a covered Unforeseen reason.

54.    The Burnett Policy provides a list of Unforeseen reasons, one of which is "for Other Covered Events, as defined . . . ."

55.    The Burnett Policy defines the phrase "Other Covered Events" to include a circumstance where "[the policyholder] or [the policyholder's] Traveling Companion [is] . . . quarantined . . . ."

56.    The Burnett Policy does not define the term "quarantine."

57.    The Burnett Policy also contains a Trip Delay benefit, described as follows:

If You are delayed for 8 hours or more while en route to, during or returning from Your Trip due to a covered Travel Hazard, We will reimburse You up to a Maximum Benefit Amount shown in the Schedule of Benefits, for the expenses You incur for additional hotel nights, meals and local transportation while You are delayed.

58.    The Burnett Policy defines "Travel Hazard" as a "delay caused by or resulting from . . . any delay of Your Common Carrier . . . [or] quarantine . . . ."

59.    The Maximum Benefit Amount under the Burnett Policy on the Schedule of Benefits is as follows:

### SCHEDULE OF BENEFITS

| Benefits | Maximum Benefit Amount |
|---|---|
| Part A – Travel Arrangement Protection | |
| Trip Cancellation | Trip Cost |
| Trip Interruption | Trip Cost |
| Occupancy Upgrade | Trip Cost |
| Missed Connection | $1,000 |
| Trip Delay | $750 ($150/day) |

60.    Upon information and belief, the Policies issued by Defendant are materially uniform in their terms and coverage.

61.    Members of the Class also purchased Policies from Defendant for the same type of travel insurance coverage as Plaintiffs.

### *Covid-19 and Related Governmental Orders*

62.    The Covid-19 virus is a highly contagious airborne virus that has rapidly spread and continues to spread across the United States.  The virus has been declared a pandemic by the World Health Organization.

63.    The Covid-19 pandemic is a public health crisis that has profoundly affected all aspects of society, prompting various federal agencies and governmental authorities to issue orders and guidance designed to slow the pace at which the virus is transmitted.

64.    On March 11, 2020, President Trump issued Proclamations 9984, 9992, and 9993, which suspends entry of foreign nationals from China, Iran, and most European countries, including France, Italy, Netherlands, and Spain.[1]

65.    March 13, 2020, the Department of Homeland Security issued a Notice of Arrival Restrictions, which required U.S. citizens returning from international travel to return through specified airports for enhanced screening.[2]

66.    Upon returning home, the Department of Homeland Security advised that all American citizens, legal permanent residents, and immediate families who are returning home from international travel, must self-quarantine for 14 days.[3]

67.    On March 19, 2020, The United States Department of State raised its global travel advisory to Level 4, which recommends that all U.S. citizens remain in place or return home from their international travel.[4]

68.    Various State Governors issued Stay at Home Orders for their citizens."

---

[1] *See* https://www.dhs.gov/news/2020/03/17/fact-sheet-dhs-notice-arrival-restrictions-china-iran-and-certain-countries-europe (last access July 22, 2020).
[2] *Id.*
[3] *Id.*
[4] *See* https://www.nytimes.com/article/coronavirus-travel-restrictions.html (last accessed July 22, 2020).

69.    For example, on March 23, 2020, Governor Wolf issued such a Stay at Home Order for certain counties in Pennsylvania including Philadelphia County, where Gordon Plaintiffs live ("March 23 Order").[5]

70.    On March 27, 2020, Governor Wolf extended the March 23 Order to include several other counties, including Butler County, Pennsylvania, where McMenamin Plaintiffs live ("March 27 Order").[6]

71.    On April 1, 2020, Governor Wolf extended the March 23 Order to include all counties within the Commonwealth of Pennsylvania ("April 1 Order").[7] Following issuance of the April 1 Order, the Governor issued "Stay At Home Order Guidance,"[8] which provides, in pertinent part:

**Individuals may leave their residence ONLY to perform any of the following allowable individual activities and allowable essential travel:**

**ALLOWABLE INDIVIDUAL ACTIVITIES**

- Tasks essential to maintain health and safety, or the health and safety of their family or household members (including, but not limited to, pets), such as obtaining medicine or medical supplies, visiting a health care professional, or obtaining supplies they need to work from home.

- Getting necessary services or supplies for themselves or their family or household members, or to deliver those services or supplies to others, such as getting food and household consumer products, pet food, and supplies necessary to maintain the safety, sanitation, and essential operation of residences. This includes volunteer efforts to distribute meals and other life-sustaining services to those in need.

---

[5] Governor Wolf, "Order of the Governor of the Commonwealth of Pennsylvania For Individuals to Stay Home," (Mar. 23, 2020), https://www.governor.pa.gov/wp-content/uploads/2020/03/03.23.20-TWW-COVID-19-Stay-at-Home-Order.pdf.
[6] Governor Wolf, "Amendment to the Order of the Governor of the Commonwealth of Pennsylvania For Individuals to Stay Home," (Mar. 27, 2020), https://www.governor.pa.gov/newsroom/governor-wolf-and-health-secretary-expand-stay-at-home-order-to-nine-more-counties-to-mitigate-spread-of-covid-19-counties-now-total-19/.
[7] Governor Wolf, "Order of the Governor of the Commonwealth of Pennsylvania For Individuals to Stay Home," (April 1, 2020), https://www.governor.pa.gov/wp-content/uploads/2020/04/20200401-GOV-Statewide-Stay-at-Home-Order.pdf.
[8] https://www.scribd.com/document/452929448/04-04-20-Stay-at-Home-Order-Guidance.

- Engaging in outdoor activity, such as walking, hiking or running if they maintain social distancing.

- To perform work providing essential products and services at a life-sustaining business (see below for details about life-sustaining business activities).

- To care for a family member or pet in another household.

**ALLOWABLE ESSENTIAL TRAVEL**

- Any travel related to the provision of or access to the above-mentioned individual activities or life-sustaining business activities (see below for details about life-sustaining business activities).

- Travel to care for elderly, minors, dependents, persons with disabilities, or other vulnerable persons.

- Travel to or from educational institutions for purposes of receiving materials for distance learning, for receiving meals, and any other related services.

- Travel to return to a place of residence from an outside jurisdiction.

- Travel required by law enforcement or court order.

- Travel required for non-residents to return to their place of residence outside the commonwealth.

***

72.    Other states issued similar restrictive orders related to the Covid-19 pandemic and are subject to the federal advisories and travel restrictions, domestic and international.

73.    The proclamations, orders, guidance, and federal advisories and travel restrictions subject Plaintiffs and members of the Class to a "quarantine" within the meaning of the Policies and of the everyday use of the word.

74.    Following safety precautions, as well as the proclamations, orders and guidance from the President, State Governors, the Department of Homeland Security, and the U.S. Department of State, Plaintiffs cancelled their respective Trips.

***Plaintiffs' Claims for Benefits Under Their Policies Were Denied***

75.    Plaintiffs' planned for and paid for their respective trips and Policies prior to the aforementioned proclamations, orders and guidance being issued.

76.    Plaintiffs' respective trips were cancelled while the aforementioned proclamations, orders and guidance were in effect, as a direct result of the Covid-19 pandemic.

77.    As a result of such cancellations, Plaintiffs incurred losses in the form of unused non-refundable prepaid payments or deposits.

78.    In accordance with the terms and conditions of the Policies, Plaintiffs each submitted a claim to Insurer seeking reimbursement for unused non-refundable prepaid payments or deposits.

79.    Insurer denied Plaintiffs' claims, in breach of their Policies.

80.    Further, if Covid-19 cancellations, delays, and/or interruptions are not covered by the Policies, Plaintiffs should be reimbursed for their portion of the premiums paid that covered post-departure perils. Insurer has not reimbursed such premiums to Plaintiffs.

## CLASS ALLEGATIONS

81.    Plaintiffs bring this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as:

> All persons who paid for and/or obtained an Individual Travel Protection Policy from Insurer, and whose claims for reimbursement were denied by or on behalf of Insurer after their trips were cancelled due to the Covid-19 pandemic, or Covid-19-related government orders, proclamations and/or guidance (the "Class").

82.    Excluded from the Class are Defendant, its subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which Defendant has a controlling interest, the legal representative, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

83.    Plaintiffs reserve the right to modify or amend the definition of the proposed Class if necessary before this Court determines whether certification is appropriate.

84.    The requirements of Rule 23(a)(1) have been met.  The Class described above is so numerous that joinder of all individual members in one action would be impracticable.  The disposition of the individual claims of the respective Class members through this class action will benefit both the parties and this Court. The exact size of the Class and the identities of the individual members thereof are ascertainable through Insurer's records, including but not limited to, the sales and transaction records that Insurer has access to and/or own.

85.    The requirements of Rule 23(a)(2) have been met.  There is a well-defined community of interest and there are common questions of fact and law affecting members of the Class. The questions of fact and law common to the Class predominate over questions which may affect individual members and include the following:

  a.    Whether such governmental orders, proclamations and guidance constitute – either individually or collectively – a "quarantine" within the meaning of Insurer's policies;

  b.    Whether Insurer's denials of the claims submitted by Plaintiffs and the members of the Class were premeditated and the product of a coordinated effort to (i) dissuade Plaintiffs and the other members of the Class from submitting and/or pursuing claims under their Policies and/or (ii) to limit Insurer's losses arising from such claims;

  c.    Whether it is unjust for Defendant to retain the portion of the premiums paid for post-departure coverage when a trip is cancelled prior to departure; and

  d.    Whether Plaintiffs and members of the Class are entitled to damages, punitive damages, costs and/or attorneys' fees for Insurer's acts and conduct.

86.    The requirements of Rule 23(a)(3) have been met. Plaintiffs' claims are typical of the claims of the members of the Class.  The claims of the Plaintiffs and members of the Class are based on the same legal theories and arise from the same unlawful and willful conduct.

87.    Plaintiffs and members of the Class were each customers of Insurer, each having applied for and purchased a travel insurance policy that is substantially identical in all material respects from Insurer.  Each likewise submitted a claim under their Policies, and each such claim was denied on the basis that the claims were not covered under the Policies.

88.    The requirements of Rule 23(a)(4) have been met. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class.  Plaintiffs will fairly, adequately, and vigorously represent and protect the interests of the members of the Class and have no interests antagonistic to the members of the Class.  In addition, Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiffs and the Class members are substantially identical as explained above. While the aggregate damages that may be awarded to the members of the Class are likely to be substantial, the damages suffered by the individual members of the Class are relatively small.  As a result, the expense and burden of individual litigation make it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them.  Certifying the case as a Class will centralize these substantially identical claims in a single proceeding, which is the most manageable litigation method available to Plaintiffs and the Class and will conserve the resources of the parties and the court system, while protecting the rights of each member of the Class. Insurer's uniform conduct is generally applicable to the Class as a whole, making relief appropriate with respect to each Class member.

## FIRST CLAIM FOR RELIEF

### DECLARATORY RELIEF
**(On Behalf of Plaintiffs and Members of the Class)**

89.     Plaintiffs incorporate by reference all preceding paragraphs, as though the same were set forth in their entirety.

90.     This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, in which Plaintiffs and members of the Class seek a judicial determination of an actual controversy regarding coverage for their unused non-refundable prepaid payments or deposits caused by a cancellation, delay or interruption of their trips due to Covid-19.

91.     The term "quarantine" is used throughout the Policies, but it is not defined therein. As such, the term "quarantine" must be given its ordinary and plain meaning as informed by, *inter alia*, its dictionary definition and the intent of the parties, as well as the custom in the industry or usage in the trade.

92.     Based on the relevant language contained in the Policies and the facts, Plaintiffs' and Class members' losses of unused non-refundable prepaid payments or deposits arise from a "quarantine" within the meaning of the Policies, and – as such – triggers the Trip Delay benefits and Trip Cancellation benefits under the Policies.

93.     Declaratory relief from this Court will resolve the aforementioned controversy and dispute.

## SECOND CLAIM FOR RELIEF

### BREACH OF CONTRACT
**(On Behalf of Plaintiffs and Members of the Class)**

94.     Plaintiffs incorporate by reference Paragraphs 1 through 88 above as though the same were set forth here in their entirety.

95.    The Policies are a valid and binding contract, for which Plaintiffs and members of the Class paid material consideration in the form of a premium.

96.    Pursuant to the terms and conditions of the Policies, the non-refundable prepaid payments or deposits are specifically covered thereunder.

97.    Insurer has materially breached the Policies by failing and refusing to reimburse Plaintiffs and members of the Class for any of their non-refundable prepaid payments or deposits. The aforementioned material breaches have damaged, and will continue to damage, Plaintiffs and members of the Class.

98.    Plaintiffs and members of the Class have performed all of their obligations under the Policies, and any and all conditions precedent to coverage under the Policies for the non-refundable prepaid payments or deposits have been satisfied, waived, or revoked, and/or Insurer is estopped from enforcing them at this time.

### THIRD CLAIM FOR RELIEF

**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs and Members of the Class)**

99.    Plaintiffs incorporate by reference Paragraphs 1 through 88 above as though the same were set forth here in their entirety.

100.    Plaintiffs bring this claim individually and on behalf of the members of the Class in the alternative to all other Claims For Relief, to the extent it is determined that the Policies do not provide coverage for Covid-19 related trip cancellations, delays, and/or interruptions.

101.    Plaintiffs and members of the Class conferred a benefit on Insurer in the form of premiums paid for Policies in order to benefit from travel coverage for pre- and post-departure perils.

102.  Insurer has retained the full benefit of the premiums, despite not having to incur any risk associated with post-departure coverage under the Policies after trips were cancelled. The retention of the full amount of the premiums, while only incurring risk for partial coverage, is unjust and inequitable under the circumstances.

103.  Insurer can readily identify the portions of the premiums that cover pre- and post-departure perils.

104.  Defendant refused to and has failed to issue refunds, in whole or in part, for the premiums paid to cover perils post-departure. Therefore, Plaintiffs and members of the Class are entitled to pro-rata refunds of the premiums paid to cover post-departure perils.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that judgment be entered in favor of Plaintiffs and the Class against Defendant as follows:

a.      For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representative of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class;

b.      For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

c.      For damages in an amount to be determined by the trier of fact;

d.      For an order of restitution and all other forms of equitable monetary relief;

e.      Awarding Plaintiffs' reasonable attorneys' fees, costs, and expenses;

f.      Awarding pre- and post-judgment interest on any amounts awarded; and

g.      Awarding such other and further relief as may be just and proper

## JURY TRIAL DEMAND

A jury trial is demanded on all claims so triable.

Dated:  September 17, 2020

Respectfully submitted,

*/s/ Gary F. Lynch*
Gary F. Lynch (PA ID 56887)
Kelly K. Iverson (PA ID 307175)
Jamisen A. Etzel (PA ID 311554)
Nicholas A. Colella*
**CARLSON LYNCH, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
T: (412) 322-9243
F: (412) 231-0246
glynch@carlsonlynch.com
kiverson@carlsonlynch.com
jetzel@carlsonlynch.com
ncolella@carlsonlynch.com

*Counsel for Plaintiffs*

**Pro hac vice** application forthcoming